### ANN ARBOR R. CO. et al. v. UNITED STATES et al.

District Court, N. D. California, S. D.
January 18, 1928.

No. 1987.

Herman Phleger, M. E. Harrison, Platt Kent, James E. Lyons, and James S. Moore, Jr., all of San Francisco, Cal., Elmer Westlake, of Chicago, Ill., F. M. Angellotti and Guy V. Shoup, both of San Francisco, Cal., and E. W. Camp and A. S. Halsted, both of Los Angeles, Cal., for petitioners.

Blackburn Esterline, Asst. Sol. Gen., of Washington, D. C., and George J. Hatfield, U. S. Atty., of San Francisco, Cal., for the United States.

J. Stanley Payne and P. J. Farrell, both of Washington, D. C., for defendant Interstate Commerce Commission.

Allan P. Matthew and McCutchen, Olney, Mannon & Greene, all of San Francisco, Cal., for intervening defendant California Growers' & Shippers' Protective League.

PER CURIAM. The Interstate Commerce Commission reduced the rate on transcontinental shipments of deciduous fruits from California to certain Eastern points from $1.73 to $1.60, and to certain other Eastern points from $1.62 to $1.50 per 100 pounds. The present suit was instituted by the large number of railroads affected by the reduction, to set aside the order of the Commission and to suspend its operation during the pendency of the suit. The application for a temporary injunction is based largely on the testimony taken before the Commission and on the report made by the Commission. We have given careful consideration to the record and to the exhaustive arguments submitted on the application for the temporary injunction, and will content ourselves at this time with a mere statement of our conclusions:

First. The contention that the reduced rate will compel the carriers to transport this class of freight at a loss, or without substantial reward, is without support in the record.

Second. The contention that the carriers are entitled to receive what would be deemed a fair return on this class of freight, independently of their other business, and independently of any other consideration, is unfounded in law.

"The Legislature, undoubtedly, has a wide range of discretion in the exercise of the power to prescribe reasonable charges, and it is not bound to fix uniform rates for all commodities or to secure the same percentage of profit on every sort of business. There are many factors to be considered—differences in the articles transported, the care required, the risk assumed, the value of the service, and it is obviously important that there should be reasonable adjustments and classifications. Nor is its authority hampered by the necessity of establishing such minute distinctions that the effective exercise of the rate-making power becomes impossible. It is not bound to prescribe separate rates for every individual service performed,

but it may group services by fixing rates for classes of traffic. As repeatedly observed, we do not sit as a revisory board, to substitute our judgment for that of the Legislature, or its administrative agent, as to matters within its province. * * * The court, therefore, is not called upon to concern itself with mere details of a schedule, or to review a particular tariff or schedule which yields substantial compensation for the services it embraces, when the profitableness of the intrastate business as a whole is not involved." Northern Pac. R. Co. v. North Dakota, 236 U. S. 585–598, 35 S. Ct. 429, 434 (59 L. Ed. 735, L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1).

Third. The Commission was authorized to reduce rates on the products of agriculture before completing the thorough investigation of the rate structure of common carriers, subject to the Interstate Commerce Act (49 USCA § 1 et seq.), as directed by the Joint Resolution of January 30, 1925, 43 Stat. 801 (49 USCA § 55), and did not otherwise misconstrue the terms of that resolution, which are in a large measure directory.

The application for a temporary injunction is therefore denied.